## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LINDA SMITH, | } | |
| | } | |
| **Plaintiff** | } | |
| | } | |
| v. | } | Case. No.: 3:06-CV-4832-RDP |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner of Social Security, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff, Linda Smith, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") terminating her entitlement to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI.  *See* 42 U.S.C. §§ 405(g). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be reversed and remanded because it is not supported by substantial evidence and proper legal standards were not applied.

**I.      Proceedings Below**

This is a continuing disability review case in which Plaintiff challenges the Commissioner's decision to terminate her benefits. (Tr. 16; 35; 104-105). On June 29, 2001, after Plaintiff had filed applications for a period of disability, DIB, and SSI benefits in November 1997 and in February 1999 (Tr. 69), an Administrative Law Judge ("ALJ") issued a consolidated, fully favorable decision awarding her benefits because he found that as of October 1, 1999, her condition met the

requirements for a finding of "disabled" under Medical-Vocational Guidelines Rule 201.00(h) and Social Security Ruling 96-8p, as of October 1, 1999. (Tr. 24, 66-74, 76).

In January 2005, after a continuing disability review, the Commissioner advised Plaintiff of its determination that her disability had ceased in January 2005 and that she would receive her last disability payment in March 2005. (Tr. 35-36; 104-105).  That determination was affirmed on reconsideration, and Plaintiff requested and received an administrative hearing before an ALJ on February 22, 2006. (Tr. 457-472).  Thereafter, on May 30, 2006, the ALJ issued an unfavorable decision finding that Plaintiff's disability had "ended as of January (not the first), 2005." (Tr. 16-23). On October 4, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 7-9), which rendered the ALJ's decision the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was 45 years old in January 2005 (the time that the ALJ found that her disability ceased), and 47 years old at the time of the ALJ's May 30, 2006 unfavorable hearing decision. (Tr. 22, 460).  Plaintiff has earned a G.E.D. (Tr. 460), and she previously worked as a short order cook, dishwasher, cashier, private sitter, newspaper stacker, and filler. (Tr. 22; 460-461).

Plaintiff testified at the February 22, 2006 hearing before the ALJ that she still can no longer work due to "bulging discs in the lower part of my back, arthritis in both hip (sic) and in the lower part of my back and my knees and my right arm," as well as migraine headaches and a hiatal hernia. (Tr. 461, 462).  Plaintiff discussed her symptoms and limitations, stating she has "tremendous pain" when she tries to do things at home; she cannot lift much, "especially with my right arm;" she has pain when she stands for very long or walks; she has pain even when sitting; her back pain radiates to her hips and legs; her knees "just go out without warning;" her back hurts when she carries

2

something; she has "tremendous pain" in her stomach due to the hiatal hernia; she has migraine headaches two or three times a week, accompanied by nausea, noise and light sensitivity; and she has pain in her shoulder and whole right side. (Tr. 462-65, 467). She estimated that she can lift "maybe five pounds," stand "for about 30 minutes to a hour . . . [while] in pain the whole time," and walk one block, with pain. (Tr. 462, 463). Regarding driving her car, Plaintiff reported that her daughter drives her sometimes, and that she has problems "if I have to look to my right. Sometime I can't make a full turn." (Tr. 466, 467).

Concerning her medical treatment, Plaintiff reported that she takes Tramadol for pain and wears a back brace. (Tr. 465). According to Plaintiff, she lies down during the day for about one or two hours, in order to relieve her pain. (Tr. 465). She also reported that during the day, she washes a few dishes, watches TV, listens to the radio, talks with her daughters on the telephone, prepares a quick supper, drives to the store, or attends church "when I can." (Tr. 466-468). Plaintiff explained that her daughter and husband help around the house and with grocery shopping because she "can't lift a whole lot" and it bothers her to do "lots of bending." (Tr. 466, 467).

## II.    Legal Standards Applicable to the ALJ Decision

The initial determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists

of what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The "ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Thereafter, if the Commissioner determines that disability benefits are due to be awarded to a claimant, as was the case here, those benefits are subject to termination if certain conditions are met.  42 U.S.C. § 423(f); 42 U.S.C. § 1382c(a)(4); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982).  Accordingly, after an award of benefits has been made, the statutes require that the Commissioner conduct periodic continuing disability reviews. *See* 20 C.F.R. §§ 404.1594; 416.994 (2007).  In such a review, the pertinent inquiry is whether there has been medical improvement, and whether the medical improvement is related to a claimant's ability to work:

> A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis

4

of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by:

    (1)    substantial evidence which demonstrates that

        (A)    there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

        (B)    the individual is now able to engage in substantial gainful activity; . . . .

42 U.S.C. § 423(f).

        "Medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."   20 C.F.R. § 404.1594(b)(1).   To apply the medical improvement standard, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) present at the time of the most recent favorable medical decision finding the claimant disabled, often referred to as the "comparison point decision" ("CPD"). 20 C.F.R. § 404.1594(b)(7).  If there has been any medical improvement in a claimant's impairment(s), the ALJ must then assess whether this medical improvement is related to the claimant's ability to work.   20 C.F.R. § 404.1594(a).   The regulations provide that medical improvement is not related to the claimant's ability to work if there has been a decrease in the severity of the impairment(s), but no increase in the claimant's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b).  Thus, if there has been any medical improvement in a claimant's impairment(s), but

it is not related to the claimant's ability to do work and none of the exceptions applies,[1] the claimant's benefits will be continued.

To guide the ALJ through the determination of whether a claimant continues to be disabled, the regulations set forth an eight-step sequential evaluation process for Title II claims and a seven-step sequential evaluation process for Title XVI claims. *See* 20 C.F.R. §§ 404.1594; 416.994.  The only difference between the two processes is that the performance of substantial gainful activity is relevant to the Title II claim (Step one), but is not relevant to the Title XVI claim. *See* 20 C.F.R. §§ 404.1594; 416.994.   The court outlines below the eight steps applicable to review of continuing disability for a Title II claim, which, absent consideration of the performance of substantial gainful activity, become the seven steps applicable to review of continuing disability of a Title XVI claim:

Step one:    The Commissioner must first determine whether the claimant is engaged in substantial gainful activity. [Not applicable to Title XVI.]

Step two:    If the claimant is not engaged in "substantial gainful activity," the Commissioner must determine whether the claimant suffers from an impairment which meets or equals the severity of an impairment listed in Appendix 1 of the regulations.

Step three:    If there is no impairment which meets or equals a listing, the Commissioner must determine whether there has been medical improvement. If there is no decrease in the medical severity, there is no medical improvement.

Step four:    If there has been medical improvement, the Commissioner must determine whether such improvement is related to the ability to work, or whether there has been an increase in the claimant's residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination.

---

[1] The regulations provide: "If your impairment(s) has not medically improved we must consider whether one or more of the exceptions to medical improvement applies." 20 C.F.R. § 404.1594(a). The parties agree that none of those exceptions is applicable here.

Step five:      If there has been no medical improvement found at step 3 or if at step
                4, the medical improvement was not related to the ability to work, the
                Commissioner must determine whether any exceptions to the medical
                improvement standard exist. If no exceptions apply, the
                Commissioner will find that the disability continues. If the first group
                of exceptions applies, continue to step 6. If an exception from the
                second group of exceptions applies, the Commissioner will find that
                the disability ended.

Step six:       If there has been medical improvement related to the claimant's
                ability to work or if one of the first group of exceptions to medical
                improvement applies, the Commissioner must determine whether the
                claimant currently has a severe impairment or combination of
                impairments. If not, the claimant is no longer disabled.

Step seven:     If the impairment is severe, the Commissioner assesses the claimant's
                residual functional capacity based on the claimant's current
                impairments, and whether the claimant can still do the work she has
                performed in the past. If the claimant is still capable of doing such
                work, the Commissioner will find that the claimant is no longer
                disabled.

Step eight:     If the claimant cannot do the kind of work that he or she performed
                in the past, the Commissioner must review the claimant's residual
                functional capacity and his or her age, education, and work
                experience to determine whether the claimant is capable of
                performing any other work which exists in the national economy. If
                the claimant can, the Commissioner will find that the disability
                ended. If not, the disability continues.

20 C.F.R. §§ 404.1594; 416.994.

## III.    The ALJ Decision to Terminate Benefits

In his May 30, 2006 decision terminating benefits, the ALJ found that Plaintiff's disability

"ended as of January (not the first), 2005," due to medical improvement as compared to the June 21,

2001 CPD. (Tr. 13-23). The ALJ stated that Plaintiff had not developed "any additional impairments

after the CPD through January 2005," and continued "to have the same impairments that she had at

the time of the CPD," *i.e.*, chronic low back pain, migraine headaches, bronchitis/chronic obstructive

pulmonary disease, osteoarthritis, and hypertension. (Tr. 18, 72). He determined that after "January (not the first), 2005," Plaintiff still could not perform any of her prior jobs, although she "regained the ability" to perform the full range of full-time sedentary work, "so long as she is not required to stand and/or walk for longer than an hour at a time," has normal rest periods, and is not required to lift more than five pounds frequently or walk more than one block. (Tr. 18, 19, 22, 23).   In so finding, the ALJ rejected Plaintiff's assertions of severe disabling pain and other symptoms as "not entirely credible" because he found they are inconsistent with the objective findings.  (Tr. 21-23). He also adopted what he termed "the residual functional capacity assessment" of consultative examining physician Dr. Evans, and he directly applied Medical-Vocational Rules 201.18 and 201.21 without consulting the opinion of a Vocational Expert ("VE"). (Tr. 21-23).

**IV.    Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Doc. # 11).  Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ committed reversible error in failing to properly apply the "medical improvement" standard; (2) the ALJ's Residual Functional Capacity ("RFC") finding is not supported by the opinion of any medical provider and, as such, cannot be based on substantial evidence; and (3) the ALJ erred when he found that there is other work in the national economy that Plaintiff can perform without eliciting the testimony of a VE on the matter. (Doc. # 11, at 1).

V.     **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.     Discussion

In light of the applicable standards, the court finds that the ALJ's decision is due to be reversed and remanded because the ALJ did not properly apply the medical improvement standard.

As noted earlier, a proper application of the medical improvement standard requires that the ALJ *first* determine whether there has been a decrease in the medical severity of Plaintiff's impairments by comparing her current symptoms, signs, or laboratory findings to the symptoms, signs, or laboratory findings that existed at the time of the CPD.  20 C.F.R. § 404.1594.  *Only if* that comparison reveals that there has been medical improvement in Plaintiff's impairments, should the ALJ proceed to the *second* inquiry - an assessment of whether that medical improvement is related to Plaintiff's ability to work. 20 C.F.R. § 404.1594(a).

In this case, the ALJ's May 30, 2006 opinion indicates that he failed to follow that sequence of analysis, instead focusing entirely on Plaintiff's RFC in light of the current medical evidence.  His opinion is devoid of any comparison of her CPD and current signs, symptoms, and laboratory findings, much less an explanation of how they have improved in the five years since the CPD.  In the portion of his opinion dedicated to his finding that "[m]edical improvement occurred as of January (not the first), 2005" (Tr. 18, Finding No. 6), he notes only that Plaintiff "regained the ability to complete an eight-hour workday at the sedentary level of exertion" while, "[a]t the time of the comparison point decision, she was unable to do so.  She continues to have discomfort and pain because of arthritis, especially of the knees.  However, so long as she is not required to stand and/or walk for longer than an hour at a time, she can perform work-related activities for eight hours in a day with normal rest periods."  (Tr. 18).  While certainly relevant to the *second* part of the medical improvement standard regarding Plaintiff's ability to work, those findings do not explain how, with

respect to the *first* step in the analysis, Plaintiff's signs, symptoms, and laboratory findings have improved as compared to the same or similar evidence in 2001 at the time of the CPD.

The ALJ does outline the post-CPD medical evidence in the next portion of his opinion, which is dedicated to his finding that Plaintiff retains the RFC to perform sedentary work.  (Tr. 19, Finding No. 7).  However, that discussion of the medical evidence is not a before-and-after comparison of Plaintiff's condition, but rather a survey of why the medical evidence supports his RFC finding that she can perform sedentary work. (Tr. 19-21).  Moreover, as Plaintiff points out, all medical evidence supporting the 2001 CPD awarding benefits (including critical reports from Drs. Laughlin, O'Brien and Martin upon which the CPD relies) (Tr. 66-73,78), was omitted from the record before this court.  It is axiomatic that those exhibits are an important component of the comparison analysis of whether Plaintiff's symptoms, signs, and laboratory findings have improved. Thus, even if the ALJ had properly set forth how Plaintiff's condition has improved since the CPD, the absence of this key medical evidence from the CPD would make it difficult for this court to review that finding for substantial evidence.

As a final matter, it has not escaped the court's attention that in response to Plaintiff's arguments regarding the ALJ's failure to properly apply the medical improvement standard, the Commissioner's brief argues primarily that the ALJ properly applied the pain standard when discrediting Plaintiff's subjective complaints. (Doc. # 12, at 6-9).  Although the ALJ's consideration of Plaintiff's subjective complaints is certainly relevant to the question of whether her medical condition has improved, subjective complaints are only one piece of the "symptoms, signs, or laboratory findings" puzzle.  20 C.F.R. § 404.1594.  Indeed, the Commissioner's brief to this court

11

mirrors the ALJ's decision in that both lack a thorough comparison of whether the medical evidence demonstrates improvement.

Because the court is persuaded by Plaintiff's first argument regarding application of the medical improvement standard, and will reverse and remand the case for further proceedings on that basis, the court need not reach Plaintiff's other two arguments regarding whether substantial evidence supports the ALJ's RFC finding and whether the ALJ erred in not engaging a VE for his analysis of job availability.

**VII.    Conclusion**

Thus, the court concludes that the ALJ's determination that Plaintiff is no longer disabled and thus, her benefits should be terminated, is due to be reversed and remanded because it is not supported by substantial evidence and proper legal standards were not applied.  A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this 21st day of March, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE